FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

2014 MAR 28 A 10: 11

US DISTRICT COURT
RICHMOND, VIRGINIA

THOMAS G. WOOD, SR., )
)
*Plaintiff,* )
)
v. )
)
RICHMOND COMMERCIAL ) Civil Action No.: 3:14cv220
SERVICES, INC. )
)
*Defendant.* )
)
)
)

# COMPLAINT

The Plaintiff, Thomas G. Wood, Sr., by counsel, makes the following Complaint against Richmond Commercial Services, Inc., a Virginia corporation:

## Nature of Claims

1. The Plaintiff, Thomas G. Wood, Sr. ("Plaintiff" or "Wood"), has diabetes and coronary artery disease. Wood's employer, the Defendant Richmond Commercial Services, Inc. ("RCS" or "Defendant") hired Wood in 1997. Woods was diagnosed with diabetes in 2008. In 2012, Wood suffered a heart attack and underwent open heart surgery which caused him to be absent from work. When Wood returned to work following this heart surgery, he was subjected to heightened scrutiny and criticism. Shortly after he returned to work from heart surgery, he had to take another leave because complications related to his diabetes required surgery to place stents in his legs. When Wood returned from the second leave, RCS imposed new and additional job requirements on him and treated him worse than other similar employees. In 2013, Wood severely lacerated his knee on the job and was placed on light duty work while he healed. RCS

later refused to allow Wood to be on light duty during this time and required him to use his accrued vacation and sick leave until he could return to full duty. When Wood returned to full duty work, RCS terminated him because of his disabilities. RCS's termination of Wood's employment because of Wood's disability violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA").

2. Wood seeks declaratory judgment, injunctive relief, back pay, benefits, compensatory damages, front pay or reinstatement and punitive damages for ADA violations; and attorney's fees.

### Jurisdiction and Venue

3. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 12117(a).

4. Wood filed a timely charge alleging discrimination on the basis of disability with the United States Equal Employment Opportunity Commission ("EEOC") on or about July 3, 2013. Wood's charge of discrimination included the discrimination complained of herein. The EEOC issued Wood a Notice of Right to Sue on January 6, 2014.

5. Wood has initiated this action within 90 days of the date of the receipt of the Notice of Right to Sue.

6. This Court is an appropriate venue for this cause of action pursuant to 28 U.S.C. 1391(b) and 29 U.S.C. § 1132(e)(2). The actions complained of took place in this judicial district; evidence and employment records relevant to the allegations are maintained in this judicial district; Wood would be employed in this judicial district but for the unlawful actions and practices of the Defendant; and Defendant is present and regularly conducts affairs in this judicial district.

## Parties

7. Wood is a male U.S. citizen and resident of Glen Allen, Virginia. At all times relevant to the matters alleged herein, Wood was an employee within the meaning of the ADA pursuant to 42 U.S.C. § 12111(4). At all times relevant to this Complaint, Wood has been a person with a disability within the meaning of the ADA.

8. RCS, at all times pertinent hereto, was, is, and has been an employer engaged in an industry affecting commerce for each working day in each of twenty or more calendar weeks in each relevant calendar year. RCS is an "employer" within the meaning of 42 U.S.C. § 12111(5)(A) and is subject to the provisions of the ADA.

## Factual Allegations

9. Wood incorporates the allegations of the preceding paragraphs as though fully set forth here.

10. Wood began his employment with RCS in 1997.

11. In or around 2008, Wood was diagnosed as having diabetes and was prescribed medication to treat the disease.

12. Wood was working with RCS in 2008 and his supervisor was Leon Thompson ("Thompson").

13. Wood told his supervisor Thompson that he had been diagnosed with diabetes.

14. Diabetes is an impairment which substantially limits endocrine function, a major life activity.

15. On or around February 23, 2012, Wood suffered a heart attack and was diagnosed with coronary artery disease.

16. Coronary artery disease is an impairment which substantially limits cardiovascular function, a major life activity.

17. RCS knew of Wood's heart attack and subsequent diagnosis of coronary artery disease.

18. Wood has a physical impairment, as well as a record of physical impairment, that substantially limits one or more of his major life activities, such that he is a person with a disability within the meaning of the ADA.

19. RCS regarded Wood as having a physical impairment that substantially limits one or more of his major life activities, such that he is a person with a disability within the meaning of the ADA.

20. In January 2012, Wood was transferred to Entrust Records Management, a division of RCS, as a Records Storage Van Driver.

21. Wood remained in the Records Storage Van Driver position until the time of his termination.

22. Wood's annual salary was $38,750.00. Wood was a full time employee. In addition to his salary, Wood received benefits, including health insurance, short term disability, and life insurance.

23. Wood enjoyed working for RCS, and his tenure at the company was, by all accounts, very successful. He performed his duties at or above the level reasonably expected by RCS.

24. On or about February 23, 2012 Wood suffered a heart attack, and he was caused to undergo open heart surgery, including 4-way coronary bypass, which caused him to be absent from work.

25. Upon Wood's return to work he was required to work with light duty restrictions. RCS accommodated Wood's need for light duty restrictions during this time.

26. On or about June 12, 2012, Wood returned to full duty work with no restrictions.

27. In early July 2012 Wood's physician diagnosed complications from diabetes. As part of his treatment, Wood needed to have stents put in his legs to improve circulation.

28. Circulatory function is a major life activity as defined in 29 CFR § 1630.2(i)(1)(ii).

29. In early July 2012, Wood informed his supervisor Ms. Semones that he would need medical leave to have stents put in his legs to improve circulation.

30. When Wood told Ms. Semones that he needed time off from work, she advised him that he would need to obtain a Commercial Driver's License ("CDL") in order to continue driving for Entrust Records Management.

31. Prior to July 2012 a CDL had never been a requirement for Wood's job.

32. Prior to July 2012 Wood had never been required to obtain or hold a CDL in order to perform his job duties and responsibilities.

33. Wood was the only Records Storage Van Driver required to obtain a CDL in 2012.

34. When Wood returned to work on July 24, 2012, he was written up for not obtaining a CDL.

35. Wood explained to Ms. Semones and presented her with a note from his physician that explained that Wood would not be able to obtain a CDL because of his disabilities and that he would not pass the physical exam required for the CDL.

36. Ms. Semones replied "I understand because I have a relative who is a diabetic.

37. In or around early December 2012, Wood was experiencing problems with the stents in his legs and was advised by his doctor not to lift heavy objects.

38. In or around early December 2012, Wood's co-workers, including Thomas Pitt ("Pitt"), noticed that Wood was having difficulty and offered to assist him with a 17-box pick up that had been assigned to the Wood.

39. The assistance provided by Pitt did not interfere with Pitt's work performance or his schedule as the drivers frequently worked in teams and helped each other out when necessary.

40. On or about December 4, 2012 Wood was written up for giving some of his workload to a co-worker without management approval and was suspended for two days.

41. It was not unusual for drivers sometimes to require assistance with larger deliveries or pick-ups and, upon information and belief, no other driver had been disciplined for such conduct.

42. When Wood returned from the two-day suspension he was put on a 30-day Performance Improvement Plan.

43. On or about January 30, 2013, Wood received a positive review of his Performance Review Plan by Ms. Semones indicating that "Tommy has really done a good job and stepped up with helping out with his co-drivers, great attitude and willingness to get the job done."

44. On or about March 7, 2013, Wood slipped on a ramp while working and suffered a large cut on his knee.

45. Wood required stitches for the cut on his knee, and his physician placed him on light duty restrictions for 10 days. Defendant accommodated the light duty restrictions at this time.

46. In or around March 2013, Wood completed the light duty restrictions and returned to work without restrictions. Upon returning to full duty Wood's wound on his knee opened up again.

47. Wood's physician placed him on another 10 day period of light duty restrictions.

48. Wood advised Ms. Semones that his knee had opened up again and that he would be required to be on light duty restriction for another 10 days. Defendant refused to accommodate him an additional 10 days of light duty and forced Wood to use his sick and vacation time and be out of work until he was able to return to full duty.

49. On April 8, 2013, Wood returned to full duty with no restrictions.

50. On April 12, 2013, Wood was informed by his General Manager, Montie Harper ("Harper"), that he was terminated for failing to obtain a CDL.

51. RCS knew that, due to his disability, Wood was unable to get a CDL.

52. RCS's managers provided Wood with written details of his termination which indicated "That the decision to release Tommy is a result of a culmination of incidents over a 8 month period beginning at the end of July 2012" also checking "Absenteeism" as a reason for termination.

53. The "Absenteeism" noted as a reason for Wood's termination referred to the time that Wood had missed from work for treatment of injuries related to his disabilities.

54. RCS's stated reasons for Wood's termination were pretextual. RCS manufactured this pretext to hide the true, unlawful and discriminatory reason: it no longer wanted to employ Wood because of his disabilities and resulting medical leaves.

55. RCS's managers acted with malice and with reckless indifference to Wood's federally protected rights to be free from unlawful discrimination, and Wood is entitled to punitive damages.

56. RCS first accused Wood of "insubordination" in July 2012, one month after Wood's return to work after his open heart surgery.

57. RCS's decision to terminate Wood was taken and implemented in willful, blatant and intentional disregard of, and in violation of, Wood's rights under the ADA.

58. Wood has been damaged by Defendant's actions, including, but not limited to loss of employment, compensation, and employment related benefits.

**COUNT ONE**
**AMERICANS WITH DISABILITIES ACT OF 1990**
**42 U.S.C. §12101 et seq.**
**Unlawful Discrimination**

59. The foregoing allegations are incorporated as if re-alleged herein.

60. All of the acts of Defendant's employees alleged herein were undertaken in the course and within the scope of their employment and on behalf of the Defendant.

61. Wood was a qualified individual with a disability as those terms are defined by the ADA.

62. In February 2012, Wood underwent open heart surgery and had to take medical leave.

63. In July 2012 Wood needed treatment related to his diabetes and requested medical leave in order to be treated for his illness.

64. In July 2012, immediately upon returning to work Wood was written up for not obtaining a CDL which had never been a requirement of his position before Wood requested medical leave.

65. Defendant knew that Wood was unable to obtain a CDL because of his disabilities.

66. In March 2013 Wood was injured while working and was required to be on light duty restrictions.

67. The requirement to obtain a CDL was not mentioned again until Wood was terminated in April 2013.

68. Following Wood's return to work from having open heart surgery, Defendant began to issue pre-textual disciplinary write-ups to Wood.

69. Defendant discriminated against Wood because of his actual and/or perceived disability.

70. Defendant ignored Wood's request for reasonable accommodation and instead terminated him.

71. Defendant's actions were done in willful violation of Wood's rights under the Americans with Disabilities Act.

72. As a direct and proximate result of Defendant's actions, Wood has suffered, continues to suffer, and will in the future suffer injury and damages, including embarrassment, inconvenience, humiliation, severe mental anguish, pain, suffering, loss of income, litigation expense including attorneys' fees, medical expense, consequential damages and other injury.

WHEREFORE, Mr. Wood demands that judgment be entered in his favor and against the Defendant on the above-stated count, and that in addition this Court issue an Order:

(i) Declaring that the acts and practices complained of herein are in violation of the Wood's rights as secured by the Americans with Disabilities Act, U.S.C. §12101 et seq.;

(ii) Requiring and issuing a mandatory injunction directing the Defendant to reinstate the Wood to a position of equal duties and responsibilities as the Wood would have received but for the Defendant's conduct, with equal pay and benefits (retroactive to April 12, 2013), or in the alternative for an award of judgment for front pay and benefits under the ADA;

(iii) Awarding Wood back pay for violations of the ADA;

(iv) Awarding Wood compensatory damages in the amount of $300,000;

(v) Awarding Wood punitive damages in the amount of $300,000;

(vi) Awarding Wood an amount sufficient to offset any adverse tax consequences resulting from a lump sum award or an award of other relief in this action because he was required to file suit to enforce his federally protected rights;

(vii) Awarding Wood other appropriate injunctive relief;

(viii) Awarding Wood incidental and consequential damages, actual attorney's fees and costs of this action, including expert witness fees; and in addition;

(ix) Awarding Wood such other and further relief as may be appropriate under the circumstances.

**TRIAL BY JURY IS REQUESTED.**

THOMAS G. WOOD, SR.

By Counsel

_/s/ Tim Schulte_
Blackwell N. Shelley, Jr. (VSB #28142)
Tim Schulte (VSB #41881)
Lauren Fisher (VSB #80360)
Shelley & Schulte, P.C.
2020 Monument Avenue
Richmond VA 23220
(804) 644-9700
(804) 278-9634 [facsimile]
tim.schulte@shelleyschulte.com
blackwell.shelley@shelleyschulte.com
lauren.fisher@shelleyschulte.com